Gaston, Judge,
 

 after stating the case as above, proceeded as follows: The question for our decision is, whether the legal effect of these bequests be to vest the
 
 absolute
 
 equitable interest of the slaves in the testator’s daughter, Mrs. Payne, or only the equitable interest therein,
 
 during her life.
 
 The court has fully considered the subject, and is of opinion that the latter is the correct exposition of the will. It was insisted in argument by the counsel for the plaintiff, that where a testator bequeaths personal property to one for life, and after his decease to the heirs of his body, such a bequest gives the whole interest in the property to the legatee, and a subsequent bequest over, on failure ot heirs of the body, is too remote, and of no effect — that as equity follows the law, the same construction prevails upon a bequest made by like words, not of the property itself, but of the equitable estate therein — and that in the will before us, there is a bequest in trust for the daughter, for life, and after her decease, for the heirs of her body. The correctness of the
 
 general
 
 doctrine asserted in this argument, with respect to wills, executed before the 15th of January, 1828, is not denied, and whether it has been changed, and if so, how far it has been changed; as to wills subsequently executed, by the act of 1827, (1 Rev, Stat. ch. 43, sec. 3,) directing what construction shall be given to contingent executory limitations,” it is unnecessary now to examine. But the true difficulty in the case, is, whether there be, in this will, a bequest in trust for the daughter, for life, and afterwards for the heirs of her body.
 

 The doctrine is confessedly founded upon a settled principle of construction, that whatever disposition would amount to an estate tail in land, gives the whole interest in personal property. Now, it is a fundamental rule of law, that where an ancestor, by any gift or conveyance, takes an estate of freehold in land, and in the same gift or conveyance, there is a limitation by way of remainder to the heirs of his body, these words are words of limitation of the estafe, and not words of purchase; and, therefore, such remainder is immediately executed in possession in the ancestor so taking the
 
 *457
 
 freehold, and is not contingent or in abeyance. But, it is clear that this rule oí law cannot operate where the estate limited to the ancestor, and the estate limited to the heirs of his body, are of different natures, so that they cannot unite, as if the first limitation to the ancestor gives only a trust estate, and the subsequent limitation to the heirs of his body passes the legal estate.
 
 Lord Say
 
 &
 
 Sele.
 
 v. Jones, 3 Bro. P. Ca. 113, 8 Viner (Devise C. b.)
 
 262
 
 — Silvester
 
 on dem. Law
 
 v.
 
 Wilson,
 
 2 Term 444. And wherever, for any cause, these limitations do not unite, then, in a bequest of chattels, as well as in a devise of lands, the ancestor takes but an estate tor life, and the persons designated by the description of heirs ot his body, lake under the subsequent limitations, as purchasers; and an executory limitation over, for want of such heirs, may be a good executory bequest to take effect, if there be no such person in existence, at the termination of the life estate.
 
 Withers
 
 v.
 
 Algood
 
 cited in
 
 Bagshaw
 
 v.
 
 Spencer,
 
 1 Ves. 150. 1 Roper on Leg. 355. In the case before us, it is indisputable that the interest bequeathed to Mrs. Payne, is an equitable interest or trust; and the important enquiry is, whether that limited or bequeathed to the heirs of her body be also an equitable interest or the legal property.
 

 The two bequests are to be found in two distinct clauses or sentences of the will, in no way connected — (not even by a conjunction) — except by their relation to the slaves, the common subject matter of each bequest. In the bequest immediately under consideration, the words are, “My will and desire is, that the negroes and their future increase, lent to my son, Alanson Williams, and Anthony Sale, in- trust, for the use and benefit oí my daughter, Betsy Payne, against the claims or control of her present or future husband, during her natural life, shall be equally divided amongst the heirs of her body forever; and for want of such, my will and desire is, that the said negroes and their future increase be equally divided amongst my other children or their representatives.” A will is defined to be “ the just sentence of our will touching what we would have done after our death.” The words, therefore, with which this sentence begins, and which are
 
 *458
 
 subsequently repeated with respect to the alternative disposi-aiterwards expressed
 
 “
 
 my will and desire is,” are as appropriate for a testamentary disposition as any that could have been selected, and are therefore equivalent to express words of gift. The subject matter of the gift is declared to be
 
 the slaves themselves.
 
 These — the slaves — and not the use, trust or beneficial interest in them — are given and given
 
 forever
 
 to the persons, whoever they may be, described as the heirs of the body of Betsey Payne. Nay,
 
 in terms
 
 they are given directly, and not after the death of Betsey Payne, and amount to a gift of the whole interest of the testator, subject to the exception of that part of his interest which is referred to as having -been previously taken out; and this is here described as a
 
 loan
 
 to Alanson Williams and Anthony Sale, in trust, for the use and benefit of Betsey Payne, free from the claims or control of her present or future husband,
 
 during her natural life.
 
 The latter words are here used as obviously expressive of the extent or duration both of the trust and the loan — and upon this clause or sentence
 
 per se,
 
 the necessary construction of the bequest is, that it passes to the legatees described in it, the slaves themselves, subject to the exception of the particular estate therein previously carved out. .Certainly, however, this construction will yield to manifest intention of the testator to be collected from other parts of the will, that the general or ulterior bequest was designed to be, not of the slaves, but of the equitable interest in them; and this intent, if it be found at all, must be found in the preceding clause or sentence of the will. The words of that are, “I lend unto Alanson Williams and Anthony Sa^ trust, for the only use and benefit of my daughter, Betsey Payne, during her natural life, against the claims or control her present or future husband, the following negroes, (naming them,) and their future increase.” The argument is, that the term “ lend” is sufficient in law to pass
 
 the
 
 absolute property in the negroes to Williams .and Sale; and, therefore, must be held to pass the absolute property, unless there be other words to cut it down to a temporary gift only — that the subsequent words' “during her life” are restrictive of that part of the trust declared in this sentence, that is to say, for
 
 *459
 
 the
 
 sole
 
 use of Betsey Payne during her life — that the whole legal estate being thus conveyed in this clause to these sons, it would be inconsistent with that disposition, to suppose any legal estate to be given, or attempted to be given, in the succeeding sentence: and. therefore, in order to reconcile these two sentences to each other, it is necessary to intend, that in the last the testator declared only the residue of
 
 the trust
 
 upon which, after Mrs. Payne’s death, the trustee should hold the slaves so absolutely given to them.
 

 In considering this argument, it is proper to bear in mind that the present enquiry is not what legal operation may be assigned to the term “ lend,” in order to effectuate the disposition, but whether we can collect from that term, taken in connection with the other words in the sentence, an intent to pass the absolute property to Williams and Sale, so clear as to overrule the intention to give a legal estate in the slaves to others, as is apparently declared in the succeeding sentence. We are expounding a will, and in such an instrument there is not only no reason why a former should be made to control a subsequent disposition, but the first part must give way to — nay, will be repealed by, the last part thereof, if in truth they be contrary to each other. But', the great rule of construction, as has been repeatedly recognized, is that laid down in
 
 Paramour
 
 v. Yardley,that words in a will are to be so favourably expounded that the intent of the testator appearing in the will, may be performed in every point, and not a jot be confounded; to which end it is the office of judges to marshal the words of wills; and the more so, if it be considered that wills are, for the most part, made in the party’s last moments, when he has not time to apply to, or advise with, counsel in the law; and that testators themselves, in general, are unacquainted with the law, and know not how to put their words in their proper order, for which reason their ignorance and simplicity demands a favourable interpretation of their words.”
 
 2
 
 Plow. 540 b. The exercise of a very moderate portion of this benignity will be sufficient so to expound this will, that the intent of the testator will be fulfilled in every point, aud not a joint thereof be confounded, by simply attributing to his words their popular, in
 
 *460
 
 stead of an artificial construction. Now, the term employed by the testator, in the disposition of the slaves to Williams and Sale, is “ lend;” and whatever legal operation this term may have, if there be nothing to shew the extent of the disposition thereby intended, it cannot be questioned but that, according to its popular sense, it is always used to designate a temporary, instead of an absolute gift. Nor is there much difficulty in collecting from the very sentence in which it is contained, the intended duration of this loan. For, immediately after this temporary gift to Williams and Sale, follow, not the subjects of disposition, but a declaration of the purposes of this loan. “ I lend to Alanson Williams and Anthony Sale, in trust, for the only use and benefit of my daughter, Betsey Payne,
 
 during her natural life.”
 
 The duration of the loan is plainly indicated by the purposes of the loan. That the extent of the legal estate given to trustees in a will, where the words are not too strong to be thereby controlled, may be collected from the trusts declared upon it, seems too plain a principle of good sense to need authority for its support — but authorities are abundant. See
 
 Doe dem. Woodcock
 
 v. Barthrop, 5 Taunt.
 
 383
 
 — Doe
 
 dem. Player
 
 v.
 
 Nicholls,
 
 1 Barn. & Cress. 336, and 2 Dow. & Ryl’d. 480. “ I take it,” says Mr. Justice Bayley, in the latter case, “ to be a settled rule in the construction of wills, that the estate given to a trustee is to continue for so long a period only as is necessary to affect the purposes of the trust.” The declared trust here follows instantly upon the estate limited to the trustee, by an expression imparting a partial disposition; and the
 
 only
 
 purpose of it is for the use and benefit of Mrs. Payne, so long as she should live. To construe the word “ lend,” thus used, to convey the slaves to the trustees
 
 forever,
 
 would seem to be a wresting of it from the sense in which it was understood and used by the testator. And for what end? Nothing is more usual in bequests of slaves, especially as a provision by a parent for his children and their descendants, than to interpose trustees for the protection of his daughters against the extravagance of their husbands, and thereby secure to them the beneficial enjoyment during their lives; and nothing more unusual than to create trustees to take a
 
 *461
 
 legal estate for those to whom the
 
 absolute
 
 estate in equity is meant to be given.
 
 Cui bono
 
 can this be intended? What' useful object can be accomplished by amere severance of the entire legal, from the entire equitable, estate? It has been already intimated, that if the word “ lend” had been used by the testator in the sense of a gift/oreaer, the subjects of'the gift would probably have been named before a declaration of the temporary purposes for which the donees were to hold them; and in connection with this intimation, it may also be remarked, that if the testator had contemplated a
 
 trust
 
 which was to last forever, it seems not a little extraordinary that he did not defer a declaration of this trust until the property to be subject to it had been designated, and then have declared the
 
 whole trust
 
 continuously. According to the construction of the. will contended for by the plaintiff, he is supposed to make known this trust by detached parcels — that is to say, declare so much of it as related to the property while Mrs. Payne might live, before the property was named. — and
 
 hint
 
 the residue of the trust, after naming the property. But, it is still more strange that he should not only have thus broken off, after a partial declaration of the trust, before he had declared it fully, but should have left us to collect the residue of the trust from words contained in a subsequent independent clause of the will, which, instead of intimating a trust, purport to convey the absolute legal estate. But, whatever may be the effect of the operative words conveying the legal estate in the first sentence, they cannot be imported into the latter sentence, without violence to the structure of both of them. Each is complete. The first finishes the disposition of the property thereby intended. The second takes up the subject
 
 de novo.
 
 It begins with distinct legatory words. — . names the property again — and designates new objects to whom the property is given. These distinct gifts are to be so construed as that they may both stand — and they will both stand, by understanding the first to be a gift during the life of his daughter — and the other to be a gift of the residuary interest not disposed of in the first.
 

 
 *460
 
 The extent of the legal estate given tp trustees in a will, ■where the ■words are not too strong to be thereby controlled, may be collected from the trusts declared upon it.
 

 
 *461
 
 By this interpretation, we shall carry into full execution the manifest purposes of the testator. It cannot be doubtedj
 
 *462
 
 but that he intended, by the disposition made of this property, that while it should be secured for the sole use of his daughter while she lived, exempt from the power of her husband, it should be also secured even
 
 against her
 
 as a permanent provision for her children, if she should leave children; and if not, then for her brothers and sisters. A construction which would give the trustees the whole legal estate — would defeat the undoubted purposes of the testator; for then the equitable remainder to the heirs of her body must unite with her equitable life estate, and make her, what this bill insists'that she is, the absolute owner in equity, and entitled to a conveyance of the legal estate. But by holding that the trustees take the legal estate during her life only, the limitation to the heirs of her body, is to them so described as .purchasers. If Mrs. Payne should leave children, they will succeed to the property as the persons thereby designated. If she should not leave children, then, the alternative limitation to the other children of the testator will take effect. Now, wherever it can be done without violating legal principles, Courts of justice feel it a duty to effectuate the full intent of a testator. In the present case, we think no such principle is violated, by the construction we adopt.
 

 The decree below, sustaining the demurrer and dismissing the bill, is affirmed.
 

 Per Curiam. Decree affirmed.