Pearson, J.
 

 The devise is, in effect, to John L. Ward for life and should he leave lawful issue, then the negroes and land
 
 to be equally divided
 
 between his lawful issue ; but should he not leave lawful issue, then the negroes and land to be sold and divided &c.
 

 The effect of the words
 
 “to be equally divided"
 
 in a devise of land, made
 
 before the year
 
 1784, to one for life and after his death to be divided between his lawful issue and for want of such issue then over, is very ably discussed by Judge Daniel in the case of
 
 Ross
 
 v.
 
 Toms,
 
 4 Dev. 376, and the Court decided, that the words do not prevent the application of the rule in Shelly’s case, but that the first taker had an estate tail, which by the Act of 1784, is converted into afee simple.
 

 The will in the ease under consideration was made in the
 
 year
 
 1788, and unless the acts of 1784. Ch. 204, Rev. Stat.
 
 632,
 
 and Ch.
 
 204,
 
 Sec.
 
 5,
 
 Rev. Stat. 287, alter the law. it is clear, that John L. Ward took an estate tail, which by act of 1784 Cir 204, Sec. 5, was converted into a fee simple. We think the acts of 1784 do alter the law^ and that in all devises of land, made since that time, the
 
 *403
 
 words “to
 
 be equally divided”
 
 prevent the application of the rule in Shelly’s case, and that the first taker has but an estate for life.
 

 The act of 1784, Ch. 204, Sec. 12, provides that a devise of land shall be held to be a devise
 
 in fee simple,
 
 unless such devise shall in plain and express words show, that the testator intended to convey an estate of less dignity.
 

 In the case of
 
 Ross v. Toms,
 
 which was a devise of land, the reason why the words
 
 “to be equally divided”
 
 were not allowod to prevent the application of “the rule,” and confine the first taker to a life estate, w'as that the main intent of the testator would be thereby defeated. In the language of Judge Daniel, “two intents are manifest, one that the daughter should have only a life estate : the other that the remainder over should not take effect, so long as any of her issue remained. The latter must be presumed to be the main intent and paramount purpose of the testator. This main intent cannot be effected by giving the daughter a life estate, and making her children take by purchase, because, there being
 
 no words .of inheritance
 
 added to the estate of the latter, they would take at that time — viz—1777, only a life estate, and after the death of either his or her share would go over. The testator intended, that on the failure of the issue of his daughter, and only on that event, his estate should go over.” To effect the main intent the daughter was held to take an estate tail. If there had been words of
 
 inheritance,
 
 by which her children could take estates in fee simple, both intents would have been effected, and she would have taken but an estate for life. In the case under consideration, the will was made in 1788, and the act of 1784, above cited, supplies the
 
 vrnrds of inheritance,
 
 so that there is no reason why the particular intent should be made to give way. Both intents can be effected.
 

 So in the case of
 
 Coe
 
 v.
 
 Wright,
 
 decided in the house
 
 *404
 
 of Lords, the decision is expressly put upon the the ground, that the main intent could be effected by giving the first taker an estate tail, and it is admitted that but for this, the words “to be equally divided” would have had the effect of making the children take by purchase, and the first taker would have had. but a life estate. This is the case upon which the decision of
 
 Ross
 
 v.
 
 Toms
 
 is founded, and both are put expressly upon the reason, that the particular intent — to give the first taker an estate for life only — must give way in order to effect the main intent. As that reason does not apply to the present case, those cases, instead of being authorities against, are authorities for, holding, that since the act of 1784, in devises to-one for life — and then to be equally divided between the’ issue, and, for want of issue, over, the first taker has an estate for life, and his children estates in fee, as tenants in. common by purchase, and so both intents are effected.
 

 This result is not only sustained by the authorities, bufe it must be so upon principle. The rule in Shelly’s case only applies, when the
 
 same persons
 
 will take the same-estate, whether they take by descent or purchase; in which case, they are made to take by descent, it being more favorable to dower, to the feudal incidents of seignories, and to the rights of creditors, that the first taker-should have an estate of inheritance
 
 ;
 
 but W'hen the persons taking by purchase would be different, or have different estates, than they would take by descent from the first taker, the rule does not apply, and the first taker is-confined to an estate for life, and the heirs, heirs of the-body, or issue in wills, take as purchasers.
 

 The words, “to be equally divided between the issue,”' take in
 
 different persons,
 
 than simply the word, “issue,” used as a word of descent. For, in the latter case, the person or persons to take would be ascertained by the rules of descent — there would be representation — and the taking would be
 
 per stirpes;
 
 while in the former, the.
 
 *405
 
 rules of descent would have no application, and there must be an equal division
 
 per capita.
 
 Hence, the use of these words prevents the application of “the rule,” and the first taker has but an estate for life, except in cases where there is some paramount intent, which would be defeated, unless the first taker be entitled to an estate o.f inheritance.
 

 The Act of 1784, ch. 204, 5, Rev. St. 258, by which estates tail are converted into estates in fee simple, has also an important bearing upon this question. In a. bequest of chattels to one for life, and at his death to his issue, and for want of issue, then over,, the first taker has the absolute estate, it being a general rule, that words, which in a devise of land would give an estate tail, in a bequest of chattels gives the absolue estate. But the words, “to be equally divided between the issue,” make an exception to the general rule ; it being inferred from these words, that the testator could not intend, that the issue should take as
 
 issue;
 
 but that they should take distributively, as pur chasers, so as to give the first taker an estate for life, and then to the issue as tenants in common.
 
 Swain
 
 v.
 
 Rascoe,
 
 3 Ire. 201.
 
 Allen
 
 v.
 
 Pass,
 
 4 Dev. & Bat. 77. This is the settled law as to the bequest of chattels, which canno.t be entailed, and in reference to which, wards, that give an estate tail, pass the interest, so as to leave nothing to be limited over as a
 
 remainder.
 
 But in England, and in this. State before 1784, after an estate tail in land, a remainder might be limited 3 hence the same words, which in a bequest of chattels gives an absolute title, in a devise of land give only an estate tail; but since the Act of 17S4a
 
 lands
 
 cannot be entailed, and the words, which before gave but an estate tail, after that gave an estate in fee' simple, or the absolute estate ; so that now, the same words give an absolute estate inland, that would give an absolute estate in chattels, and a
 
 remainder
 
 cannot be limited in either land or chattels, after what would for*
 
 *406
 
 merly have been an estate tail. The effect of the Act of 1784, therefore, has been to put land upon the same footing with chattels, and the same rule is applicable to both. So in a bequest of chattels, the words, “without leaving issue,” are construed to mean “without leaving issue
 
 living
 
 at the death of the first taker,” in order to support a bequest over, which could not be good as a remainder and would otherwise be too remote, as an executory bequest; whereas, the same words, in a devise of land, did not receive that construction, because the devise over was good, as a.remainder, but since the Act of 1784, there cannot be an estate tail in land, and the devise over would not be good as a remainder, and to support it, as an executory devise, the construction put on the words, “without leaving issue,” is now the same in a devise of land, as in a bequest of chattels, because the same necessity exists for such a construction, in order to give effect to the limitation over.
 
 Jones
 
 v.
 
 Speight,
 
 1 Car. Law Rep. 544.
 
 Zollicoffer
 
 v.
 
 Zollicoffer.
 
 4 Dev. & Bat. 438.
 
 Clapp
 
 v Fogle
 
 man,
 
 1 Dev & Bat. Eq. 466.
 

 Our conclusion, therefore, is, that the operation of the Act of 1784, ch. 204, sec. 5, and sec. 12, is to give to the words, “to be equally divided between the issue,” the effect of preventing the first taker from having the absolute estate, and of giving him an estate for life, and then to the, issue distributively, as tenants in common by purchase, in a devise of land, in the same way as these words do in a bequest of chattels, and that where the words, “if he should die without leaving issue, then over,” &c., are added, as in this case, suoh a limitation over would be supported in reference to the land as an executory devise,, as it is in reference to chattels as an executory bequest,
 

 "We consider it fortunate, that there is
 
 now
 
 this uniformity, and that the same rule is applicable to land and chattels ; for, although the same words in the same instrument must sometimes have a
 
 different
 
 meaning put
 
 *407
 
 upon them, when the subjects are different,
 
 yet,
 
 as the intent is always the same, it is a matter of regret, when by the rules of law a different meaning has to be put on the same' words, for the intent is obviously violated, in reference to one subject or the other.
 

 It must be declared that the testator, John L. Ward, had a life estate only in the land mentioned in the pleadings.
 

 Per Curiam.'
 

 Declared accordingly.