Battle, J.
 

 The questions presented for our consideration in this ease, arise upon the construction of the following clause in the will of Isaac J. Sanderlin, which was made, and published the 17th day of June, 1838: “I lend the use of the balance of my property, both real and personal, after paying my just debts, unto my son, Willis Sanderlin, during his natural life, and at his death, I give and bequeath it unto his heirs lawfully begotten by his body, and for the want of such heirs, to go to William W. Sanderlin’s children, and Maxey Sanderlin’s children.”
 

 The defendant’s counsel contends, first, that the legatee, Willis Sanderlin, took an absolute interest in the slaves which composed a part of the personal estate, and that the limitation over was too remote, and therefore void: and secondly, that if the limitation over was good, then only such of the children of W. W. Sanderlin and Maxey Sanderlin as were living at the death of the legatee Willis, could take under it, and that, therefore, the present suit, in which the administrators of the deceased children of the said W. W. and Maxey Sanderlin are parties, cannot be maintained.
 

 We agree with the defendant’s counsel, that Willis Sander-lin took an absolute interest in the slaves by virtue of the rule in
 
 Shelly's case,
 
 as applied to personal chattels. See the leading case of
 
 Ham
 
 v.
 
 Ham,
 
 1 Dev. and Bat. Rep.
 
 598,
 
 and the authorities there referred to. The bequest of the use of the personal property to the legatee for life, was the same as the loan or gift of the chattels themselves for life; since,“ undoubtedly,” said Judge GastoN, in delivering the opinion of the Court in
 
 Vanhook
 
 v.
 
 Vanhook,
 
 1 Dev. and Bat. Eq. Rep. 592, “in ordinary discourse as well as in legal construction, the use or profits of a chattel for life, and the loan of the chattel for life, are of equivalent meaning and operation.” This distinguishes the present from the case of
 
 Payne
 
 v.
 
 Sale,
 
 2 Dev. and Bat. Eq. Rep. 455, where it was held, where slaves were
 
 *77
 
 given to a trustee in trust for the legatee for life, and the legal interest in them was given to the heirs of her body, the two estates, being of different natures, the one legal and other equitable, could not unite, and therefore the rule in
 
 Shelly's
 
 case, would not apply.
 

 We differ from the counsel as to the limitation over being too remote, the case of
 
 Weeks
 
 v. Weeks, 5 Ire. Eq. Rep. 111, is, in our opinion, a direct authority to show that though the limitation over, would at common law have been too remote, yet it is made good by our act of 1827, 1 Rev. Stat. ch. 43, sec. 3. It is true, that act uses the terms, “ dying without beir or heirs of the body, or without issue or issues of the body,” &c. ; but it is said by the Court, in
 
 Weeks
 
 v. Weeks, that the act was intended to establish
 
 “
 
 a beneficent rule of construction which the Legislature found necessary to prevent the frustrating of the intentions of testators upon technical grounds.” We should be very poorly engaged in carrying out the beneficent design of the law-makers, if we were to yield to the argument of the counsel, and hold that the words, “ for want of such heirs of the body,” did not come within the meaning of the act.
 

 The remaining question is, whether the children of' W. W. and Maxcy Sanderlin, who died in the life time of Willis San-derlin, took such an interest in the executory bequest as, upon their death, devolved upon their personal representatives? It is very certain that if an estate for life only had been given to Willis Sanderlin, the bequest to the children of W. W. and Maxcy Sanderlin, would have become vested as they came into existence during the life of the legatee, and upon the death of any one or more of them, before the death of the legatee for life, would have gone to his or their representative or representatives. See
 
 Vanhook
 
 v.
 
 Vanhook,
 
 1 Dev. and Bat. Eq. 589;
 
 Wallace
 
 v. Cowell, 3 Ire. Rep. 323, and many other cases. It is equally certain that if the children, instead of being designated as a class, had each been named personally, the interests, though contingent, would have devolved upon the administrators of such of them as died in the life time of
 
 *78
 
 Willis Sanderlin,
 
 Robards
 
 v.
 
 Jones,
 
 4 Ire. Rep. 53; P
 
 inbury
 
 v.
 
 Elkin,
 
 1 Peer. Will. Rep. 563;
 
 Barnes
 
 v.
 
 Allen,
 
 1 Brown’s, ch. cas. 181; Roper on Leg. 402, 1 Jarm. on Wills 777. It is not so certain upon the authorities, that such contingent interests given to children as a class, will devolve upon the representatives of such as died before the contingency happens. Mr. Jarman says, in the page above referred to, “that a contingent interest will or will not be transmissible to the pei’sonal representative of the legatee, according to the nature of the contingency on which it is dependant. If the gift is to children who shall live to attain a certain age, or shall survive a given period or event, the death of any child pending the contingency has obviously the effect of striking the name of such deceased child out of the class of presumptive objects, and consequently such an interest can never devolve to representatives, as it becomes vested and transmissible at the same instant of time. Where, however, the contingency on which the vesting depends, is a collateral event, irrespective of attainment to a given age, and surviving a given period, the death of any child pending the contingency works no such conclusion, but simply substitutes and lets in the legatee’s representative for himself.” For this he cites
 
 Pinbury
 
 v. Elkin;
 
 Barnes
 
 v.
 
 Allen,
 
 herein before referred to, and several other cases. The case of
 
 Gill
 
 v.
 
 Weaver,
 
 1 Dev. and Bat. Eq. Rep. 41, supports the first part of Mr. Jarman’s proposition. There the personal representative of a deceased child was excluded from the benefit of a legacy given in the following terms: “ I give to my wife all my personal estate, to have the sole use of it until my youngest living child comes of age, provided she, my wife lives: if she dies before my youngest living child becomes of age, then all my personal property shall be equally divided among- my living children, male and female, except, &c., &c. It is my desire, that if my wife does live until my youngest living child comes of age, she shall have one equal share of my estate as is mentioned.” In excluding the representative of a child who died before the contingency happened, the Court laid much stress upon the word “ living,” in the
 
 *79
 
 direction, for the division among the testator’s “living children, male and female.” The deceased child not being then living, was held to be necessarily excluded : the Court at the same time declaring that the “ inclination of the Court is to construe legacies, and especially provisions for children, to be vested and transmissible, if the words will possibly admit of it, and they are most reluctantly held to be contingent.” The 6$se of
 
 Stanley
 
 v.
 
 Wise, 1
 
 Cox’s Rep. 432, may, it seems to ns, be relied on in support of the latter part of the proposition. In that case the testator having four daughters, three of whom were named, Mary, Sarah and Elizabeth, bequeaths to the two first £4,000 each, but if either of them died unmarried, he empowered her to dispose of £400, part of her £4,000, and the residue of that sum, £3,600, he directed to go and be divided among his surviving daughters, and the children of such of them ás should be then dead, the children taking their mother’s share. Sarah died unmarried. Elizabeth died before Sarah, having had five children, two of whom survived Sarah, and the other three died before her. The question was, whether the share given to the children of Elizabeth was so vested as they came
 
 in
 
 esse, subject to be divested upon the contingency of Sarah’s marriage, that the interest of the children who died before Sarah, would be transmissible to their personal representatives. Lord KeNyoN, who was then Master of the Rolls, held that they were, and therefore, that the fund must be equally divided'between the representatives of the deceased children, and those who were living. The principle decided in
 
 Stanly
 
 v.
 
 Wise,
 
 is directly applicable to the case before us, and must govern it. There, the fund was given absolutely to the testator’s daughter, Sarah, with a limitation over, in the event of her dying unmarried, to the children of her sister, Elizabeth. The legacy given to the children as a class, was necessarily executory and contingent, and yet it was held, that each child took such an interest in it, that upon his or her death, before the contingent event happened, it devolved upon his or her representative. It is not stated whether either of the children who died, was born after the death of
 
 *80
 
 the testator, but we do not think that would make any difference. We have seen that it would not, in the bequest of a remainder to the children of a certain person after the death of a legatee for life. Such after-born children, as much answer the description as any others; and the construction which gives the interest in the executory bequest to the personal representatives of those who die before the contingency happens, will always tend to secure such interests to the issue of such deceased children, should they leave any, and thus carry out more completely the beneficent intention of the testator towards the family of him or her, to whose children the bequest is made.
 

 It is to be further remarked in favor of this construction, that if the deceased children should have died intestate, leaving no issue and no debts to be paid, the other children would, as next of kin, be entitled to claim from the representative the share assigned to such deceased child, so that in most cases the result would be nearly the same, whether the executory interest go to the representative of the deceased child or not. Our conclusion then, in the case before us is, that upon the death of Willis Sanderlin without leaving any lawful heirs of his body, the slaves bequeathed to him, with their increase, went to the administrators of the children of W. W. Sander-lin and Maxcy Sanderlin, who had died in the life time of the said Willis Sanderlin, as well as to those who were living at his death. The judgment of nonsuit given in the Court below, must therefore be reversed; and according to the case agreed, judgment must bo entered for the plaintiff in this Court.
 

 Judgment reversed.