SALLIE A. HOOKER and others, children and legatees of Mrs. A. E. Montague v. B. F. MONTAGUE, Executor of Mrs. A. E. Montague, and THE NORTH CAROLINA BAPTIST ORPHANAGE, Thomasville.

(Decided December 6, 1898.)

### *Wills—Rule in Shelly's Case.*

Executory trusts do not come within the operation of the rule in Shelly's case.

CIVIL ACTION involving the construction of Mrs. A. E. Montague's will, heard before *Timberlake, J.*, at February Term, 1898, of the Superior Court of WAKE County.

The testatrix died in Wake county March 27, 1893, leaving property, both real and personal, and constituting her son, B. F. Montague, her executor.

One of her daughters, Zollie Montague, has since died, unmarried, leaving a will, the ulterior beneficiary named therein being the Baptist Orphanage at Thomasville, N. C.

The clause of Mrs. A. E. Montague's will, the subject of construction, is:

"Item 3rd. That all my property—real, personal, and mixed—be converted into money and divided equally between my children, share and share alike, with this restriction, however, that the share or shares falling to my daughters under this will be placed in the hands of my son, B. F. Montague, as trustee for each of them, and that he shall hold the same for and during the natural life of each one respectively, and pay each of them the yearly interest or profit arising from said fund during the life of each and to their individual heirs at law after the death of each of my said daughters respectively.

The plaintiffs contend that Zollie took but a life estate under this clause of her mother's will, with remainder to her heirs, and that they were her heirs and entitled to the remainder. The Baptist Orphanage claims that Zollie took the entire interest, which she had a right to dispose of by will, and had willed it to the Orphanage. The amount involved is about $1500.

His Honor held that by the terms of her mother's will, Zollie's share vested in her absolutely, or in fee, with the right to dispose of the same absolutely, or in fee. Judgment accordingly.

Plaintiffs excepted, and appealed.

*Messrs. Argo & Snow*, for plaintiffs (appellant).
*Mr. W. N. Jones*, for defendant.

DOUGLAS, J.: We are of the opinion that the devise in question does not come under the rule in Shelly's case, so as to vest in Zollie Montague the absolute title to her portion of the fund arising from her mother's will. The will of Zollie Montague is not now under consideration, as it is admitted that it legally disposes of all property of which Zollie had a right to dispose. The contest arises solely under the will of the mother, Mrs. A. E. Montague, whom we shall hereafter call the testatrix. The third item of her will is as follows:

"That all my property, real, personal and mixed, be converted into money and divided equally among my children, share and share alike, with this restriction, however, that the share or shares falling to my daughters under this will, be placed in the hands of my son, B. F. Montague. as trustee for each of them, and that he shall hold the same for and during the natural life of each one respectively, and pay each of them the yearly

interest or profit arising from said fund, during the life of each, and to their individual heirs at law after the death of each of my said daughters respectively."

Item 4. "I appoint my son, B. F. Montague, my sole executor to execute this will as he may deem best."

It will thus be seen that B. F. Montague was both executor and trustee, but when the duties of one ceased and of the other began, it is difficult to determine. In any event, he had the absolute custody of the property, and was charged with responsible duties in the management thereof. He was required to sell the property, real and personal, convert it into money, apportion the fund between the legatees, paying to each son his share and retaining the shares of the daughters, invest the shares of the daughters so as to produce an income, pay to each the profit arising from her share during her entire life, and then after her death to pay to her "individual heirs" something, but whether the principal or only the interest does not clearly appear. All this he was to do "as he may deem best."

No part of the principal could go into the hands of Zollie, whose share we are now particularly considering, but must be retained and managed by her brother. For the purposes of this trust, when he ceased to be executor he became *eo instanti* trustee, and in our opinion held the legal title along with the actual possession and the right of possession.

It is said that "The testatrix does not even give the custody of the estate to B. F. Montague, but provides that it be *placed in his hands* as trustee. What is the difference? Surely no one else had the "custody."

Again it is said that "the relations of B. F. Montague with regard to this fund were *in the nature* of a guardian or manager of the estate." This means nothing to

our mind beyond an executory trust.   If he was a mere manager, he must have been an agent for some principal; but for whom ?   He was not Zollie's agent, for he was neither her appointee nor subject to her direction; neither was he her guardian, for she was apparently of lawful age.   A trust loses none of its essential attributes by being denominated a *quasi* guardianship of a special fund.

It is a well established principle that executory trusts do not come within the operation of the rule in Shelly's case; and it is difficult to distinguish this case from that of *Saunders* v. *Edwards*, 55 N. C., 134.   There the will provided that: "As to my property, my will and desire is, that after my death, it may all be equally divided among my children, share and share alike, but in the distribution it is my will and desire that the portions falling to my daughters, Jane Boykin, Amanda Edwards and Eugenia Blackwood, should be secured and settled upon them, the said daughters and their children respectively; and the more effectively to carry into execution this my will and desire, in regard to the division that may fall to my daughters aforesaid, I give and bequeath such lots and divisions as may fall to them from the equal division of my property as aforesaid, unto my beloved friend, Ashley Saunders, to hold in trust for the sole use and benefit of them, my said daughters *and their heirs forever*, to him and his heirs in trust as aforesaid."   The Court held that this was manifestly an executory trust and did not come within the rule in Shelly's case, and that the daughters took only a life estate with remainder over to their children.

In the leading case of *Ham* v. *Ham*, 21 N. C., 598, 600, relied upon by the Court, the general rule is expressly qualified by holding that "the words 'heirs of

the body' are held to be words of limitation *unless* there be some clause or restriction added, whereby it plainly appears that the words 'heirs of the body' are *intended as words of purchase.*" This qualified deference to the intention of the testator is shown in numberless cases throughout the books, only a few of which need be cited: *Allen* v. *Pass*, 20 N. C., 77; *Moore* v. *Leach*, 50 N. C., 88; *Thompson* v. *Mitchell*, 57 N. C., 441; *Faribault* v. *Taylor*, 58 N. C., 219; *Pless* v. *Coble*, Ibid, 231; *Newkirk* v. *Hawes*, Ibid, 265; *Ward* v. *Jones*, 40 N. C., 400; *Jenkins* v. *Jenkins*, 96 N. C., 254; *Crawford* v. *Wearn*, 115 N. C., 540; *Francks* v. *Whitaker*, 116 N. C., 518.

In *Pless* v. *Coble, supra,* it was held that "where a testator in a residuary clause gave the surplus of his property to a son and daughter, in these words, 'and my desire is that such surplus be equally divided and paid over to my son A and my daughter M, my will and desire is that my daughter M's equal part, in this last devise, to her bodily heirs, equally to be divided between them,' the daughter took an estate for life, with remainder to her children." A long list of cases from other jurisdictions to the same effect may be found in the exhaustive brief of Judge Greene in *Moore* v. *Stone's Executors*, 19 Grat. 130, 199.

The Rule in Shelly's case is purely a technical rule, and being contrary to the general spirit of the law, inasmuch as it tends to defeat the intention of the testator, should be strictly construed. In the case at bar, we think that the trust, being executory, does not come within the rule, and that Zollie Montague took only a life estate in the interest or profits of the fund, the principal going in remainder to the heirs of Zollie, who are also the heirs of her mother. Whether they

take directly from Zollie or through the will is immaterial to this discussion.

The intention of the testatrix is plain to us, and we think is legally effectuated.

However noble may be the object of Zollie's bounty, it was not the object of the bounty of the testatrix. She was seeking to provide for her own children, and not for the children of others. She wished those to inherit her property who inherited her blood, and she fondly hoped that the results of her thrift and economy might be enjoyed by those she cradled in lap and heart. As it was her property, we do not feel at liberty to thwart her will, guided by a mother's love and within the letter and spirit of the law. We think the judgment should be reversed.

Reversed.

FURCHES, J., dissenting: This action depends upon the construction of the will of Mrs. A. E. Montague, mother of plaintiffs and defendant B. F. Montague. The third item of the will is as follows:

"That all my property, real, personal and mixed, be converted into money and divided equally between my children, share and share alike, with this restriction however, that the share or shares falling to my daughters under this will be placed in the hands of my son B. F. Montague, as trustee for each of them, and that he shall hold the same for and during the natural life of each one respectively, and pay each of them the yearly interest or profit arising from said fund, during the life of each, and to their individual heirs at law after the death of each of my said daughters respectively." "Item 4. I appoint my son, B. F. Montague, my sole executor to execute this will as he may deem best."

So it depends upon the proper construction of these two "items," as it is not contended that there are any other parts of the will that can affect the construction of them.

Zollie Montague was one of the daughters of the testatrix, referred to in the third item of her will. Zollie Montague died in August, 1895, never having married, and without leaving issue of her body. Before she died, she made and executed a last will and testament, by which she willed a remainder of her estate to the Baptist Orphanage at Thomasville.

The plaintiffs are the brothers and sisters of the testatrix, Zollie Montague, and they contend that under the will of the mother, A. E. Montague, the said Zollie only took a life estate and had no interest to dispose of by her said will, and that the plaintiffs are entitled to same, under the will of the mother, A. E. Montague, or as her next of kin and distributees.

It will be observed that the estate is given to the daughter Zollie, and not to B. F. Montague as trustee. It was to be "divided *equally* between my children, *share and share alike* . . . . however, that the share or shares falling to my daughters under this will *be placed* in the hands of my son B. F. Montague, as trustee, for each of them." The testatrix does not even give the custody of the estate to B. F. Montague, but provides that it *"be placed"* in his hands as trustee. So, if this had been real estate, the Statute of Uses and Trusts could not have operated to carry the legal estate to the *cestui que* trust, for the reason that there was no legal estate in the trustee. It is true that the Statute of Uses and Trusts has nothing to do with the matter under consideration, but it is used in the discussion to show that B. F. Montague had no legal estate in this

HOOKER *v.* MONTAGUE.

fund.   This distinguishes this case from *Payne* v. *Sale*, 22 N. C., 455, cited and relied upon for the plaintiffs. In that case, the estate was given to the trustee who held the legal estate, and their *cestui que* trust had the equitable estate.   And the remainder after the determination of the life estate was a legal and not an equitable estate, and the Rule in Shelley's Case could not operate. The relations of B.' F. Montague with regard to this fund were in the *nature* of a guardian or manager of the estate.

Seeing that this estate was given to Zollie and that she was the legal owner of the same, the Rule in Shelley's Case applies, as is held in *Ham* v. *Ham*, 21 N. C., 598, which seems to be the leading case on this subject; and Judge Battle, in republishing this volume of the Reports says that this has been considered the settled law of the State ever since that decision.    *Ham* v. *Ham* has been followed in *Sanderlin* v. *Deford*, 47 N. C., 74, *Worrell* v. *Vinson*, 50 N. C., 91, and in other cases.    In *Worrell* v. *Vinson*, there was a trustee named, and that case is similar, in almost every respect, to the case now under consideration.    And the court there held that the circumstance of a trustee being named made no difference; that if it were held that the party named as trustee had taken the legal estate, it was but the naked legal estate, and the legatee at once took the legal and equitable estate and became the absolute owner, under the doctrine of *Ham* v. *Ham* and *Worrell* v. *Vinson*, *supra*.

Under the light of these authorities I think we should affirm the judgment of the court below.

FAIRCLOTH, C. J.:   I concur in the dissenting opinion.