HELEN L. RIEGEL, EXECUTRIX OF THE WILL OF HARRY J. RIEGEL, DECEASED, AND HELEN L. RIEGEL, INDIVIDUALLY, PLAINTIFFS v. WILLIAM D. LYERLY, INDIVIDUALLY AND AS A REPRESENTATIVE OF THE CLASS OF ALL ADULT PERSONS NOW IN BEING AND WHO MIGHT BE HEIRS AT LAW OF HELEN L. RIEGEL, AT THE TIME OF HER DEATH, AND ALL UNBORN PERSONS, UNKNOWN PERSONS AND ALL OTHER PERSONS, WHETHER NOW IN BEING OR HEREAFTER COMING INTO BEING WHICH UNDER THE LAWS OF THE STATE OF NORTH CAROLINA MIGHT NOW OR MIGHT HEREAFTER ACQUIRE SUCH STATUS AS TO BECOME HEIRS OF HELEN L. RIEGEL AT THE TIME OF HER DEATH, DEFENDANTS, AND JOHN D. SHAW, GUARDIAN AD LITEM FOR UNKNOWN HEIRS, ADDITIONAL DEFENDANT.

(Filed 23 July, 1965.)

**1. Wills § 32—**

The Rule in *Shelley's* Case applies to personalty as well as realty.

**2. Constitutional Law § 6—**

Settled law may not be changed by judicial fiat, questions of public policy being uniquely the province of the legislative branch of the government.

**3. Wills § 32—**

A devise and bequest of the remainder of the estate to testator's wife for the term of her natural life with a limited power to invade the *corpus* if the income from the estate were insufficient for her support, with later provision that upon the death of the wife two-thirds of the estate should go to testator's mother and one-third "in fee simple to the heirs at law of my said wife," *held* to transmit to the wife a life estate in two-thirds and a fee simple in one-third of the estate under the Rule in *Shelley's* Case.

APPEAL by defendants from *Riddle, S.J.*, October 5, 1964 Non-Jury Civil Session of MECKLENBURG.

Harry J. Riegel (Riegel), a resident of Mecklenburg County, died testate, March 2, 1961. His will has been probated in Mecklenburg County.

Plaintiff, widow of testator, instituted this action, as a legatee and as executrix, to secure a judgment declaring her individual rights in the property passing under the will.

Item 1 directs plaintiff, the executrix, to pay testator's debts; and Item 2 directs payment of inheritance and other death taxes out of the general funds of the estate, using for that purpose either income or principal, as executrix deems advisable.

Items 3, 4 and 5 read as follows:

"ITEM III. All the rest, residue and remainder of my estate, real, personal, mixed and otherwise, of which I die seized or possessed, to which I am in any way entitled at the time of my death, or over which I then have any power of appointment by will, I give, devise and bequeath to my beloved wife, Helen L. Riegel, for the term of her natural life, the net income therefrom to be used and enjoyed by her so long as she shall live.

"If the net income payable to my said wife under the terms of this item of my will, supplemented by income, funds and property available to her from other sources, shall not be sufficient comfortably to maintain and support my wife, or to defray medical, surgical or hospital expenses of my wife, then and in that event she shall be permitted to use such sum or sums out of the principal of my estate as shall from time to time be needed for the purposes aforesaid; provided, however, that the amount of principal shall not during any one year exceed the sum of Eighteen Hundred ($1800.00) Dollars.

"ITEM IV. Upon the death of my said wife, Helen L. Riegel, I give and bequeath in fee simple to my mother, Mrs. Goldie R. Cook, of New Lebanon, Ohio, two-thirds (⅔) of the then balance corpus of my estate, and I give and bequeath in fee simple to the heirs-at-law of my said wife the remaining one-third (⅓) of the then balance of the corpus of my estate.

"ITEM V. If my said wife and I should die in or as the result of a common disaster, then I give and bequeath in fee simple all of the rest, residue and remainder of my estate, real, personal, mixed and otherwise, of which I die seized or possessed, to the persons, and in the proportions, as follows:

"(a) One-half (½) to my mother, Mrs. Goldie R. Cook, of New Lebanon, Ohio;

"(b)    One-half (½) to my father-in-law and mother-in-law, Mr. and Mrs. William B. Lyerly, of Charlotte, North Carolina, share and share alike, or to the survivor, if one of them should predecease me."

Mrs. Riegel has no descendants. Her mother, Mrs. William Lyerly, died in 1948. Her father's correct name is William *D.* Lyerly.

The court adjudged plaintiff the owner of an estate for her life in the properties passing under Item 3 of the will, with the additional right to use the corpus to the extent authorized in the second paragraph of Item 3; and by Item 4, the absolute owner of an undivided one-third interest in the residuary estate.

Defendants Lyerly and Shaw, as guardian *ad litem,* excepted and appealed.

*John D. Shaw for defendant appellants.*

*Helms, Mullis, McMillan & Johnston; E. Osborne Ayscue, Jr.; William H. Bobbitt, Jr., for plaintiff appellees.*

RODMAN, J.    The widow's assertion of absolute ownership calls for answers to these questions: (1) Does the rule in *Shelley's* case or a similar rule apply to the disposition of personal property in this State? (2) If so, does the widow, by Item 4 of the Riegel will, acquire absolute ownership in one-third of the residuary estate?

The law in this State, settled by a uniform line of decisions, is that a grant, devise or bequest to A for life, remainder in fee or absolutely to the heirs-at-law of A vests A with an estate in fee simple or absolute unless it is made to appear from other portions of the instrument transferring title that the grantor or testator used the words "heirs-at-law" as *descriptio personae,* and not as words of limitation. It makes no difference whether the grant or gift is real property, real and personal property, or personal property alone. Stated differently, the rule in *Shelley's* case has been consistently applied in North Carolina to the disposition of personal property where the language would require application of the rule in a disposition of real estate.

Seemingly, the earliest case in our reports presenting the question is *Cutlar v. Cutlar,* 3 N.C. 154, decided in 1801. It was there held that a gift of slaves to a mother and son "for their lives, and the life of the longest liver or survivor, remainder to the heirs of the survivor," vested the survivor with title absolute.

The *Cutlar* case was followed in 1812 by *Nichols v. Cartwright,* 6 N.C. 137. There, the court was called upon to pass on the rights of B, under a deed by A which "lent" B, his sister, a female slave for B's

natural life, and "at her death I give the said girl and her increase unto the heirs of my said sister, lawfully begotten of her body, forever." Taylor, C.J., speaking for the court, said: "A rule applied to chattels is, that where a remainder is limited by such words as if applied to realty would constitute an estate tail, the person to whom it is given takes the property absolutely."

In *Ham v. Ham*, 21 N.C. 598, decided in 1837, the court was called upon to construe a will which devised real estate to Caren Ham and bequeathed a negro man and a negro woman to Caren "during her lifetime or widowhood; and then I give them to her lawful heirs for them and their heirs forever." Daniel, J., speaking for a court composed of Ruffin, Daniel and Gaston, said: "The land mentioned in the recited clause of the will, we think, is clearly and absolutely given in fee to Mrs. Ham. And if the subsequent words in the clause which relates to the slaves, had related to the land, then there would be no doubt but Mrs. Ham would be entitled to the whole fee, by force of the rule in *Shelley's* case." He cites numerous English cases to support his assertion. He then says: "Does the rule in *Shelley's* case extend to chattels personal? On this point authorities are not so plenty as they are in the case of terms for years, yet we think, they are not wanting. As it is well established, that the rule extends to terms for years, which, on the death of the termor, go to the executor, and not to the heir; we cannot see, why the rule should not extend to chattels personal, when there is nothing in the will which shows that the testator meant by the word 'heirs,' children, next of kin, or any other class of persons." He cites, in support of his conclusion, *Kent's Commentaries and Gettings v. McDermott*, 7 Cond. Eng. Ch. Rep. 268, decided by Lord Chancellor Brougham in 1834.

The will interpreted in Floyd v. Thompson, 20 N.C. 616, contained a bequest of slaves in language similar to the language involved in *Ham v. Ham, supra*. The conclusion reached in the *Ham* case was reaffirmed. Chief Justice Ruffin, citing *Ham v. Ham*, said: "We then looked into all the cases in the books within our reach and felt obliged to hold that in such dispositions of personal chattels as this, the entire property vests in the first taker."

In *Payne v. Sale*, 22 N.C. 455, Gaston, J. said: "The doctrine is confessedly founded upon a settled principle of construction, that whatever disposition would amount to an estate tail in land gives the whole interest in personal property. Now, it is a fundamental rule of law that where an ancestor, by any gift or conveyance, takes an estate of freehold in land, and in the same gift or conveyance there is a limitation by way of remainder to the heirs of his body, these words are words of limitation of the estate, and not words of purchase; and, therefore, such

remainder is immediately executed in possession in the ancestor so taking the freehold."

Similar conclusions and statements of the law are made in *Coon v. Rice,* 29 N.C. 217; *Bradley v. Jones,* 37 N.C. 245; *Sanderlin v. Deford,* 47 N.C. 74; *Worrell v. Vinson,* 50 N.C. 91; *Hodges v. Little,* 52 N.C. 145; *Boyd v. Small,* 56 N.C. 39; *Williams v. Houston,* 57 N.C. 277.

In *Williams v. Houston, supra,* Chief Justice Pearson said: "It is unnecessary to enter more fully into the reason of 'the rule,' or to refer to the numerous cases in which it has been held to extend to personal property; it is sufficient to say it is well settled as 'a law of property,' and our case falls directly within its operations."

The application of the rule to personalty, as well as realty, was recognized in *Pless v. Coble,* 58 N.C. 231, but not applied because it appeared from the instrument transferring title that the word "heirs" was not used in its technical sense but as *descriptio personae.*

Chief Justice Pearson's declaration that it was "well settled as 'a law of property' " that the rule of Shelley's case was as applicable to personal property as to real property was made in 1858. Seemingly, the statement then made has been accepted as the law of this State. We have found no decision since that time which challenges that statement. Cases have arisen in which it was necessary to decide whether the rule applied to a particular factual situation, *e.g., Thompson v. Mitchell,* 57 N.C. 441; *Pless v. Coble, supra; Chambers v. Payne,* 59 N.C. 276; *King v. Utley,* 85 N.C. 60; but none deny the application of the rule to personalty.

In *Hooker v. Montague,* 123 N.C. 154, 31 S.E. 705, decided in 1898, the court recognized the rule as applicable to personalty where the estates were of the same character, but the majority held that the rule was not there applicable because the life tenant's estate was equitable and the estate in remainder was legal. This difference in character of the estates prevented a merger.

Looking beyond our borders, we find English cases decided prior to the Revolutionary War hold the rule includes both real and personal property. See *Butterfield v. Butterfield,* decided in 1748, 1 Ves. 132, 153; *Theebridge v. Kilburne,* decided in 1750, 2 Ves. 232; *Garth v. Baldwin,* decided in 1755, 2 Ves. 646.

England in 1925, by statute, Halsbury's Statutes of England, 2d Ed., Vol. 20, § 131, abolished the rule in *Shelley's* case by providing that the word "heirs," or similar words in instruments thereafter executed, should operate "as words of purchase and not of limitation."

An examination of cases decided by appellate courts of sister states shows a marked divergence of opinion with respect to the inclusion of personalty in the rule. See Simes and Smith, The Law of Future In-

SHOPPING CENTER *v.* HIGHWAY COMMISSION.

terests, 2d Ed., Vol. 1, § 367; 47 Am. Jur. 808, 809; 96 C.J.S. 303. Several states have enacted statutes similar to the English statute.

Unwilling as we are to change the law of property by judicial fiat, we answer the first question in the affirmative. If public policy requires a change, we think it should be made by the· Legislature. *Williams v. Hospital,* 237 N.C. 387 (391), 75 S.E. 2d 303; *Menne v. City of Fond Du Lac,* 77 N.W. 2d 703; *Bond v.. Midstates Oil Corp.,* 53 So. 2d 149. The change, if made, should apply to instruments thereafter executed. *Trust Co. v. Andrews,* 264 N.C. 531; *Bennett v. Cain,* 248 N.C. 428, 103 S.E. 2d 510; *Wilkinson v. Wallace,* 192 N.C. 156, 134 S.E. 401.

Nowhere in Mr. Riegel's will is there anything to indicate that the words "heirs-at-law" in the bequest reading: "Upon the death of my said wife * * * I give and bequeath in fee simple to the heirs-at-law of my said wife the remaining one-third (⅓) of the then balance of the corpus of my estate," were intended to define the grantee. It follows that the widow took an absolute, "fee simple" estate and that the second question must also be answered "yes." *Tynch v. Briggs,* 230 N.C. 603, 54 S.E. 2d 918; *Ratley v. Oliver,* 229 N.C. 120, 47 S.E. 2d 703; *Rose v. Rose,* 219 N.C. 20, 12 S.E. 2d 688; *Rowland v. Building & Loan Assn.,* 211 N.C. 456, 190 S.E. 719; *Floyd v. Thompson, supra.*

Affirmed.