JOE W. MARTIN AND WIFE, SALLIE JANE MARTIN, v. O. H. KNOWLES.

(Filed 4 April, 1928.)

**1. Deeds and Conveyances — Construction and Operation — Estates and Interests Created—Rule in Shelley's Case.**

Where the description of the grantees in a deed is to L. and her children, and the granting clause and the other relevant parts of the deed conveys to L. a life estate in the lands, and then "to her heirs, executors, administrators and assigns": *Held,* L. takes a fee-simple estate under the rule in *Shelley's case,* the word "children" in the preliminary designation being regarded as an inadvertence.

**2. Same—When Rule in Shelley's Case Applies.**

The rule in *Shelley's case* applies when, and only when, there is an estate of freehold granted to A. with a limitation over, either mediately or immediately, in fee or in tail, to the heirs of A.

**3. Same.**

As to whether a limitation over is to heirs *qua* heirs is a preliminary question to be decided by general rules of construction, and is determinative of the applicability of the rule.

**4. Same—Rule of Law.**

The rule in *Shelley's case* is a rule of law and not a rule of construction. See discussion of the rule by Mr. Hayes·as given in the opinion of the Court.

APPEAL by defendant from *Nunn, J.,* at January Term, 1928, of WAYNE.

Controversy without action, submitted on an agreed statement of facts, to determine the title to a tract of land.

Plaintiffs, being under contract to convey to the defendant a certain tract of land situate near the town of Mount Olive, Wayne County, duly executed and tendered a deed therefor, and demanded payment of the purchase price as agreed, but the defendant declined to accept the deed and refused to make payment, claiming that the title offered is defective.

Upon the facts agreed, the court, being of opinion that the plaintiffs were able to convey a good and sufficient title, gave judgment accordingly, from which the defendant appeals, assigning error.

*D. H. Bland for plaintiffs.*
*Langston, Allen & Taylor for defendant.*

STACY, C. J. Plaintiff, Sallie Jane Martin, derives title to the tract of land sought to be conveyed, the *locus in quo,* by deed from Albert D. Dail and wife, and, on the facts agreed, the title offered was properly made to depend upon the construction of said deed.

The parties are designated in the premises as "Albert D. Dail and his wife, Lucy W. Dail, parties of the first part; and Sallie Jane Martin and her children, parties of the second part." The granting clause and other parts of the deed are as follows: "Said parties of the first part, for and in consideration of ten dollars paid by the party of the second part, the receipt of which is hereby acknowledged, have bargained and sold and by these presents do bargain, sell and convey unto said party of the second part a life estate therein, and then to her heirs, executors, administrators and assigns, a certain tract of land (description not in dispute).

"It is the purpose of this deed to convey the above tract of land to Sallie Jane Martin during her lifetime, then to her heirs in fee simple, forever.

"To have and to hold the aforesaid tract of land, and all privileges and appurtenances thereto belonging, to the said parties of the second part, their heirs and assigns, to their only use and behoof."

The record is silent as to whether there were any children of Sallie Jane Martin *in esse* at the time of the making of this deed, or as to whether she has ever had any children. However, under the view we take of the conveyance, the facts in this respect, whatever they may be, are not deemed material.

Plaintiffs contend that under the foregoing deed, Sallie Jane Martin holds a fee-simple title to the tract of land sought to be conveyed; while the defendant contends that, under said deed, the plaintiff, Sallie Jane Martin, took only a life estate in the property thereby conveyed. It was agreed that judgment should be entered for plaintiffs, or for the defendant, according to the view the court should take as to the contentions of the parties with respect to the proper construction of this deed.

It is manifest, we think, viewing the instrument in its entirety, that, under the rule in *Shelley's case,* this deed conveys to Sallie Jane Martin a fee-simple estate to the land described therein. *Welch v. Gibson,* 193 N. C., 684, 138 S. E., 25; *Benton v. Baucom,* 192 N. C., 630, 135 S. E., 629; *Hampton v. Griggs,* 184 N. C., 13, 113 S. E., 501; *Crisp v. Biggs,* 176 N. C., 1, 96 S. E., 662; *Nichols v. Gladden,* 117 N. C., 497, 23 S. E., 459. The use of the word "children" in naming the party of the second part was evidently an inadvertence.

One of the clearest statements, if not the clearest exposition, of the rule in *Shelley's case,* to be found anywhere, appears in Vol. I Hayes's Conveyancing (5 ed.), 542-553, published in 1840 by William Hayes, Esq., eminent English barrister and author, from which we quote somewhat at length, as this work, if not out of print, is no longer readily obtainable on the market. The explanation ought to prove helpful to the profession, as well as to students of the subject.

Mr. Hayes says: "The rule in *Shelley's case* says, in substance, that if an estate of *freehold* be limited to A., with *remainder* to his heirs, general or special, the remainder, although importing an independent gift to the heirs, as original takers, shall confer the inheritance on A., the ancestor. An attempt will now be made to develop the leading principles of this rule, than which, when divested of all extraneous matter, no rule of law is more simple or certain.

"I. If the rule in question had *not* been adopted, land might have been limited for a particular estate of freehold (as to one in tail, for life, *pur auter vie,* etc.), with remainder to the heirs of the body, or heirs general,

of the freeholder, which remainder, since *nemo est hœres viventis,* must have been *contingent* during his life, but, if not defeated by the determination, in his lifetime, of his particular estate, would have vested, on his death, in the person or persons then answering the description of his heir or coheirs special or general. Thus the law would have stood. If not, why was the rule instituted?

"II. The rule assumes and founds itself upon two preëxisting circumstances—a freehold in the ancestor, and a remainder to the heirs. The absence of either of these ingredients repels the application of the rule; their concurrence irresistibly invites it. When the rule supposes the second limitation to be a remainder, it plainly excludes—1, the case of limitations differing in quality, the one being legal and the other equitable; 2, the case of limitations arising under distinct assurances; and, 3, the case of an *executory* limitation, by way of devise or use; and, consequently, upon *principle,* the case of a limitation arising under an appointment of the use;—but *authority* seems to have established an anomalous exception in regard to appointments. Again, as the second limitation must be a remainder to the heirs, it follows, that, with limitations to *sons, children,* or other objects, to take, either as individuals or as a class, under what is termed a *descriptio personœ,* as distinguished from a limitation embracing the line of inheritable succession, the rule has no concern whatever. In order to find whether the second limitation is a *remainder* to the *heirs* or not, we must resort to the general rules and principles of law. The rule being a maxim of legal policy, conversant with *things* and not with *words,* applies whenever judicial exposition determines that *heirs* are described, though informally, under a term correctly descriptive of other objects, but stands excluded whenever it determines that other objects are described, though informally, under the term *heirs.* Thus, even the word *children,* aided by the context, or the word *issue,* uncontrolled by the context, may have all the force of the word *heirs,* and then the rule applies; while the word *heirs,* restrained by the context, may have only the force of the word *children,* and then the rule is utterly irrelevant. These are preliminary questions, purely of construction, to be considered without any reference to the rule, and to be solved by, exclusively, the ordinary process of interpretation. *This* point, kept steadily in view, would have prevented infinite confusion.

"III. The operation of the rule is two-fold: first, it denies to the remainder the effect of a gift to the *heirs;* secondly, it attributes to the remainder the effect of a gift to the *ancestor* himself. It is, therefore, clear that the rule not only defeats the intention, *but substitutes a legal*

*intendment directly opposed to the obvious design of the limitation.* A rule which *so* operates cannot be a rule of *construction.* As a consequence of transferring the benefit of the remainder from the heirs, who are unascertained, to the ancestor, who is ascertained, the inheritance, limited in contingency to the heirs, *may* become *vested* in the ancestor; and, as another consequence of the same process, the ancestor's estate of freehold *may* merge in the inheritance. Thus—1. If land be limited to A. for life, remainder to his heirs or to the heirs of his body, the primary effect will be to give him an estate of freehold (liable, of course, to merger), with, by force of the rule, a remainder immediate and vested, to himself in fee or in tail (just as if the limitations were to him for life, remainder to *him and* his heirs, or to *him and* the heirs of his body) ; and the final result, under the law of merger, will be, by the absorption of the particular freehold in the vested inheritance, to give him an estate in fee tail or an estate in fee simple in possession. But—2. If land be limited to A. for life, remainder, *if A. shall survive B.,* to his (A.'s) heirs or to the heirs of his body, then, as the remainder is contingent, because made to depend on A.'s surviving B., the ancestor (A.) will take, under the rule, not a vested, but a *contingent* inheritance (just as if the limitations were to him for life, remainder, if, etc., to *him and* his heirs, or to *him and* the heirs of his body), the rule changing the *object* but not the *quality* of the remainder. Here, as the inheritance cannot vest, the particular estate of freehold will not merge, but A. will remain tenant for life, with an immediate *contingent* remainder to himself in tail or in fee. This remainder, in the event of his surviving B., will *vest* in him (A.) ; the estate of freehold will *then* merge, and he will thus have, as in the previous example, a fee tail or fee simple in possession. So—3. If land be limited to A. for life, remainder to B. for life or in tail, remainder to the heir or heirs of the body of A., then, by reason of the interposition of the estate for life or estate tail of B., the ancestor (A.) has, under the rule, not an immediate, but only a *mediate* inheritance (just as if the limitations were to him for life, remainder to B. for life or in tail, remainder to *him* (A.) *and* his heirs, or to *him and* the heirs of his body), the rule changing the *object,* but not the *position,* of the remainder. A., therefore, will be tenant for life, with a mesne *vested* remainder to himself in tail or in fee, in which remainder, if B.'s interposed estate should determine in A.'s lifetime, A.'s life estate will merge, and he will then have, as in the first example, a fee tail or fee simple in possession.

"The obvious deduction from these examples is, that in no case does the *rule* disturb the particular estate of freehold in the ancestor, which estate is left to the uncontrolled operation of ordinary principles, merg-

ing, or not merging, according as the remainder, transferred by the rule from the heirs to the ancestor, is absolute or conditional, proximate or remote. The estate of freehold is a *circumstance* without which the rule is dormant; but the rule, when called into action, exerts its force *on the remainder alone.* Why *that* circumstance was selected, we can only conjecture. It is affirmed, indeed, that a limitation to A. for *life,* with *remainder* to his heirs, is in truth the same thing as a limitation to *A. and his heirs.* In the simple case thus put, the effect, under the *rule,* aided by the doctrine of *merger,* is the same, but surely the import is not the same. And how unsatisfactory does this reasoning appear, when it is recollected that the rule equally applies where the gift is to A. for life, remainder (interposed) to B. for life, remainder to the heirs of A.; or to A. *pur auter vie,* remainder to the heirs of A.; or, to A. *durante viduitate,* remainder to the heirs of A.; or to A. in tail, remainder to the heirs of A. etc.—cases which need only be mentioned in order to destroy the theory that would form a fee by the *union* of the two limitations. It is an error, and the fruitful parent of errors, to affirm that the limitations unite or coalesce under the *rule,* which has discharged *its* office by simply substituting the ancestor for the heirs in the second limitation.

"IV. When the ordinary rules of construction have ascertained the co-existence of a freehold in the ancestor with a remainder to the heirs, the simplest and surest method of applying the rule is to read the second limitation as a limitation to the *ancestor himself and* his heirs. This gives at once, and in every possible case, the true result. The effect, universally and constantly, will be the same as if the remainder had been expressly and intentionally limited to the ancestor and his heirs: reading the words 'and his heirs,' not (according to the notion referred to at the close of the preceding paragraph), as words of limitation of the estate of freehold before expressly *limited* to him, but as words of limitation of the estate in remainder *attributed to him by the rule.*

"These positions, which really comprise the whole doctrine of the *rule,* appear in themselves to be clear and demonstrable. But text-writers seem to have perplexed this branch of learning by insisting, at one time, that, upon *general principles,* the law would not allow of a remainder to the heirs, as purchasers, of an ancestor taking a particular estate of freehold, or, in other words, that there is no special interdict at all— a summary mode of ending the discussion, by annihilating the very subject of it; at another, that the rule is a key to the construction, nay, consults the *intention* of the limitations; again, that where the remainder is immediate, the limitations *unite* or coalesce, or, with equal inaccuracy, that the estate of the ancestor is *enlarged* into an estate tail, and that where the remainder is mediate they unite or coalesce *sub modo,* so as to

admit the intervening estates, or, in other words, that they are at once united and distinct, at once consolidated and unconfounded.

"The rule, when viewed in its true light, as a rule which refuses to one (and only one) given mode of disposition the intended effect, and arbitrarily imposes a different effect, ceases to present that mysterious aspect with which acute and laborious, but, in this instance, apparently misdirected learning has invested it. Its reason may be lost, its policy may be questioned, but its authority must be acknowledged; while its application is relieved from every difficulty. No longer the sport of conflicting opinions or decisions, it has a determinate purpose and a uniform result.

"The propriety of abolishing the rule has been suggested; but as it does not interfere with the construction of words, none of the questions arising upon devises to *heirs* and *issue* would be prevented by its abolition. It affixes no technical sense to *heirs* or *issue,* but when, by the common rules of interpretation, there is found to be a gift for life, remainder to the heirs, then, and not till then, the rule steps in, and gives the remainder to the ancestor, to the disappointment of the whole scheme of the limitations. If there had been no such rule, the intention would have been completely effected by permitting the *heirs* to take the remainder originally in their own right, with a capacity of transmission to all the heirs of the body of the ancestor. It is against *this* mode of taking, and this mode of taking *alone,* that the rule is directed. If these simple principles had been kept in view, the great case of *Perrin v. Blake,* which was contested so many years (1 Harg. Coll. Jur. 283), could not have divided for an instant the opinions of the bench. The only result of abolishing the rule would be to make the first taker tenant for life, with a contingent remainder to his *heirs,* not to his *children.* If the limitations were of the *legal* estate, the contingent remainder might be destroyed. As the remainder would have no ascertained object till the death of the ancestor, the family arrangements which, when estates are entailed according to the usual course of strict settlements, so frequently succeed the majority of an eldest son, would be impracticable. We are too apt to be struck by the effect of the rule in giving the inheritance to the first taker, without considering what would be its destination in the absence of the rule."

It follows from what is said above that the judgment rendered in the Superior Court is correct, and it is accordingly approved.

Affirmed.