MARY NELME GRIFFIN AND HUSBAND, THOMAS E. GRIFFIN; AND NONA NELME CLARKE AND HUSBAND, KENNETH CLARKE, v. L. C. SPRINGER (ORIGINAL PARTY DEFENDANT), AND BENNETT M. EDWARDS, GUARDIAN AD LITEM FOR THOMAS E. GRIFFIN, JR., BENNETT GRIFFIN, DAVID GRIFFIN, MARY CHARLOTTE GRIFFIN, AND THE UNBORN CHILDREN OF MARY NELME GRIFFIN; HENRY C. DOBY, JR., GUARDIAN AD LITEM FOR THE UNBORN CHILDREN OF NONA NELME CLARKE; AND THE BANK OF WADESBORO, SUBSTITUTE TRUSTEE UNDER ITEM XXII OF THE LAST WILL AND TESTAMENT OF WILLIAM A. SMITH, DECEASED (ADDITIONAL PARTY DEFENDANTS).

(Filed 9 May, 1956.)

**1. Controversy Without Action § 1—**

The sufficiency of a deed to convey title can be adjudicated by the submission of a controversy without action under G.S. 1-250.

**2. Deeds § 11—**

The intention of grantor as expressed in the entire instrument must be given effect in construing the deed unless such intention is in conflict with some unyielding canon of construction, or settled rule of property, or fixed rule of law, or is repugnant to the terms of the grant, and to this end all parts of the deed should be given force if this can be done by any reasonable interpretation.

**3. Same—**

The granting clause is the heart of a deed, and in the event of repugnancy between it and preceding or succeeding recitals, the granting clause will prevail.

**4. Deeds § 13a—Deed held to convey life estate and not the fee to grantor's grandnieces.**

The introductory recitals in the deed in question stated that the instrument was between grantor, party of the first part, his nephew by marriage, party of the second part, the nephew's two children, parties of the third part; the granting clause was to the party of the second part for life, at his death to be divided to the parties of the third part equally, and "at their death" to the children of the named grandnieces, with *habendum* "to hold the estate as set out to the parties above named." *Held:* The named grandnieces took only a life estate after the life estate of their father, with limitation over upon their respective deaths to their respective children, G.S. 39-1 not being applicable, since the granting clause plainly discloses the intent of grantor to grant the grandnieces merely a life estate.

**5. Deeds § 13b—**

A conveyance to grantor's grandnieces by marriage for life and to the children of the named grandnieces respectively at their deaths does not convey a fee simple to the grandnieces by application of the rule in *Shelley's case*, since that rule does not apply unless it manifestly appears that the word "children" is used in the sense of heirs general.

**6. Deeds § 13d: Estates § 9a—**

Where a deed conveys land for life to persons *in esse* with remainder upon their respective deaths to their respective children, and one of the life tenants has children and the other none, the rule against perpetuities is not applicable, since the remainder vests immediately in the children of one life tenant, subject to be opened up to include after-born children, and as to the other life tenant, the remainder must vest, if at all, during her life.

**7. Estates § 9a—**

In contemplation of law, the possibility of issue is commensurate with life.

**8. Same—**

A conveyance to a person for life with remainder to her children is valid even though the life tenant have no children at the time of the execution of the deed, since the life estate is sufficient to uphold the contingent remainder, and such contingent remainder will vest *eo instanti* a child is born to the life tenant.

APPEAL by defendants from *Phillips, J.,* December Term 1955 of ANSON.

Controversy without action to determine the sufficiency of a deed to convey title, submitted to the Court under G.S. 1-250, for its decision and judgment.

William A. Smith, a resident of Anson County, had no children. Mr. Smith had an ancestor by the name of Nelme. That name was about to become extinct in the county. William Bennett Dunlap, a distant relative by blood of Mr. Smith and a nephew of his wife, came to live with Mr. Smith when a child, and lived with him until 1916. Mr. Smith proposed to his young relative that if he would have his named changed to Bennett Dunlap Nelme, he would give him his property. The young relative accepted the offer, and his name was changed from William Bennett Dunlap to Bennett Dunlap Nelme by a special proceeding in Anson County, North Carolina, in 1904. In 1916 Bennet Dunlap Nelme moved on a farm of Mr. Smith, known as the Nelme Place.

On 4 June 1921 William A. Smith, in consideration of ten dollars to him paid by Bennett Dunlap Nelme, the receipt of which was acknowledged, and the further consideration of love and affection borne by him to Bennett Dunlap Nelme and his children, the parties of the third part, viz. Mary and Nona Nelme,—he calls Bennett Dunlap Nelme his adopted son—executed and delivered to Bennett Dunlap Nelme the deed, whose contents are thus summarized. The deed is by and between William A. Smith, party of the first part, and Bennett Dunlap Nelme, party of the second part, and B. D. Nelme's children, Mary and Nona, parties of the third part. The granting clause sells and conveys, gives,

grants and aliens to Bennett Dunlap Nelme "a life estate, at his death to be divided to the parties of the third part equally, and to the children of the said Mary and Nona Nelme, respectively, at their death." The land conveyed lies in Anson County, contains 1,325 acres, and is known as the Presley Nelme land. The *habendum* clause reads "to have and to hold the estate as set out to the parties above named."

Bennett Dunlap Nelme lived on this land from 1916, until his death in 1939. William A. Smith died in 1934.

Mary Nelme Griffin has four children, the oldest of whom was 13 years old in 1955. Nona Nelme Clarke has no children.

Since their father's death Mary Nelme Griffin and Nona Nelme Clarke have been in the peaceful possession of this 1,325-acre tract of land.

On 15 August 1955, Mary Nelme Griffin, nee Mary Nelme, and her husband, and Nona Nelme Clarke, nee Nona Nelme, and her husband, entered into a contract with the defendant L. C. Springer to sell him 11.87 acres of the 1,325 acres embraced in the Smith deed of 4 June 1921.

In compliance with the contract Mary Nelme Griffin, and her husband, and Nona Nelme Clarke, and her husband, executed under date of 25 August 1955 a fee simple deed with full covenants of warranty to the 11.87 acres of land, and tendered the same to L. C. Springer, and demanded payment of the purchase price specified in the contract.

L. C. Springer refused to accept the deed and to pay the purchase price agreed upon on the ground that the plaintiffs could not convey a fee simple title to the 11.87 acres of land.

The court rendered judgment in favor of the plaintiffs, and the defendants excepted, and appealed.

*Little, Brock & McLendon for Mary Nelme Griffin and husband, Thomas E. Griffin, Plaintiffs, Appellees.*

*R. L. Smith & Son for Nona Nelme Clarke and husband, Kenneth Clarke, Plaintiffs, Appellees.*

*Taylor, Kitchin & Taylor for L. C. Springer and The Bank of Wadesboro, Substitute Trustee, Defendants, Appellants.*

*Henry C. Doby, Jr., Guardian Ad Litem for the unborn children of Nona Nelme Clarke, Defendant, Appellant.*

*Bennett M. Edwards, Guardian Ad Litem for Thomas E. Griffin, Jr., Bennett Griffin, David Griffin, Mary Charlotte Griffin, and the unborn children of Mary Nelme Griffin, Defendant, Appellant.*

PARKER, J. The sufficiency of a deed to convey title can be adjudicated by the submission of a controversy without action under G.S.

1-250. *Sedberry v. Parsons,* 232 N.C. 707, 62 S.E. 2d 88; *Weathers v. Bell,* 232 N.C. 561, 61 S.E. 2d 600; *Prince v. Barnes,* 224 N.C. 702, 32 S.E. 2d 224; *Williams v. Blizzard,* 176 N.C. 146, 96 S.E. 957.

From the earliest periods, and continuously to the present time, we have adhered to the rule that in construing a deed the discovery of the intention of the grantor must be gathered from the language he has chosen to employ, and all parts of the deed should be given force and effect, if this can be done by any reasonable interpretation, unless the intention is in conflict with some unyielding canon of construction, or settled rule of property, or fixed rule of law, or is repugnant to the terms of the grant. *Davis v. Brown,* 241 N.C. 116, 84 S.E. 2d 334; *Bryant v. Shields,* 220 N.C. 628, 18 S.E. 2d 157; *Seawell v. Hall,* 185 N.C. 80, 116 S.E. 189; *Brown v. Brown,* 168 N.C. 4, 84 S.E. 25; *Gudger v. White,* 141 N.C. 507, 54 S.E. 386; *Rowland v. Rowland,* 93 N.C. 214; *Kea v. Robeson,* 40 N.C. 373; *Campbell v. McArthur,* 9 N.C. 33.

*Ruffin, C. J.,* said for the Court in *Kea v. Robeson, supra:* "Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow."

It has been said that the strongholds of this now widely accepted rule of intention appear to have been North Carolina, Kentucky and California. Anno. 84 A.L.R., page 1063.

These are the relevant parts of the deed, which has no warranty clauses:

It is a deed made by and between William A. Smith, party of the first part, Bennett D. Nelme, party of the second part, and Bennett D. Nelme's children, Mary and Nona, parties of the third part.

GRANTING CLAUSE. The deed gives, grants, aliens, assigns and conveys "to the party of the second part a life estate, at his death to be divided to the parties of the third part equally, and to the children of the said Mary and Nona Nelme respectively at their death" the 1,325-acre tract of land.

HABENDUM CLAUSE. "To have and to hold the estate as set out to the parties above named."

The heart of a deed is the granting clause. That clause is naturally looked to to see what was intended to be conveyed. *Artis v. Artis,* 228 N.C. 754, 47 S.E. 2d 228; *Bryant v. Shields, supra;* 16 Am. Jur., Deeds, page 567. A reason for this is that an effective deed must contain operative words of conveyance. *Pope v. Burgess,* 230 N.C. 323, 53 S.E. 2d 159; *Waller v. Brown,* 197 N.C. 508, 149 S.E. 687. Another reason is that where the name of the grantee, the thing granted, and the *quantum* of the estate are clearly set forth in the granting clause, the *habendum* clause is not absolutely necessary to make a deed effective. *Bryant v. Shields, supra;* 16 Am. Jur., Deeds, page 567.

The words "the children of the said Mary and Nona Nelme respectively at their death" appear in the operative words of conveyance: these words do not appear in the introductory recital giving the names of the parties. This Court said in *Ingram v. Easley*, 227 N.C. 442, 42 S.E. 2d 624: "In the event of any repugnancy between the granting clause and preceding or succeeding recitals, the granting clause will prevail. *Williams v. Williams*, 175 N.C. 160, 95 S.E. 157; 16 A.J. 575." See also: *Dull v. Dull*, 232 N.C. 482, 61 S.E. 2d 255.

In *Mayberry v. Grimsley*, 208 N.C. 64, 179 S.E. 7, the deed was to "M. and her children," with granting clause "to M., her heirs and assigns," and *habendum* "to have and to hold . . . to M., her heirs and assigns." It was held to convey no estate to the children of M. *in esse* at the time of the execution of the deed, the word "children" appearing only in the introductory recital, and the intent of the grantor as gathered from the whole instrument being to convey the estate to M. in fee. In other words, the granting clause was held to prevail. To the same effect see: *Martin v. Knowles*, 195 N.C. 427, 142 S.E. 313.

The words in the granting clause "to the children of the said Mary and Nona Nelme *respectively* at their death" means to the children of Mary Nelme and to the children of Nona Nelme, respectively, for the all sufficient reason that no child can possibly be the child of both sisters. *Mewborn v. Mewborn*, 239 N.C. 284, 79 S.E. 2d 398; *Horne v. Horne*, 181 Va. 685, 26 S.E. 2d 80; Anno. 16 A.L.R. 123.

The plaintiffs contend that, pursuant to the provisions of G.S. 39-1, Mary Nelme Griffin and Nona Nelme Clarke each owns an indefeasible fee to one-half of this tract of land. This contention is untenable, for the reason that in the granting clause the deed in plain and explicit words shows that the intention of the grantor was to grant them merely a life estate, and the *habendum* clause creates no estate contradictory or repugnant to that given in the granting clause. To adopt plaintiffs' contention would require us to nullify the words in the granting clause "to the children of the said Mary and Nona Nelme respectively at their" (Mary's and Nona's) "death." "Words deliberately put in a deed, and inserted there for a distinct purpose, are not to be lightly considered or arbitrarily thrust aside . . ." *Brown v. Brown, supra.*

In *Mewborn v. Mewborn, supra,* the testator in the part of his will relevant to the question before us used words strikingly similar to the language of the deed here. He devised to his wife a life estate in all his real estate. Item 4 of his will reads: "After the death of my beloved wife, I give and devise to George Washington Mewborn and Paul Hodges Mewborn my home place where I now reside .`. ., and the tract of land known as the Shine's Farm . . ., for a term of their natural lives; said tracts of land to be equally divided between them

and after the death of the said George Washington Mewborn and Paul Hodges Mewborn it is my will and desire that the aforesaid tracts of land go to their children." The testator died in 1924. George Washington Mewborn never married, and died without issue. This Court by *Denny, J.,* said: "We think the provision in Item 4 of the will of W. D. Mewborn, directing an equal division of the lands devised therein between the two life takers, indicates a clear intent on the part of the testator that upon the death of his wife, the first taker for life, the sons should hold their shares in the devised lands in severalty. Therefore, upon their respective deaths their respective shares would go to their respective children, if each one of them had children. But since George Washington Mewborn died without issue, the interest in the lands devised to him for life reverted to the estate of W. D. Mewborn."

In *Power Co. v. Haywood,* 186 N.C. 313, 119 S.E. 500, William Boylan, who died in 1861, in Item 3 of his will devised a plantation in Chatham County to his son, John H. Boylan for life, and in this Item of his will further provided, "if my said son, John, shall marry and shall have any lawfully begotten child or children, or the issue of such, living at his death, then I give, devise and bequeath the said plantation and negroes to such child or children; but, if he shall die, leaving no such child or children, nor the issue of such, then living, then I give the said plantation and negroes to my grandson, William (son of William M. Boylan), during his natural life, and at his death to his eldest son." John H. Boylan never married, and died without issue. The grandson, William Boylan, married, and his eldest and only son, William James Boylan, was born in 1886, twenty-five years after the testator's death. This Court speaking through *Adams, J.,* said: "We regard it unquestionable that William Boylan (son of William M. Boylan), by virtue of the devise in the third item of the will, immediately upon the death of John H. Boylan, unmarried and without issue, took an estate in the land for his natural life, and that the remainder which was contingent theretofore (the remainderman not being *in esse*) became vested in William James Boylan at the moment of his birth. For this reason, section 1773 of the Consolidated Statutes, which pertains to contingent limitations, is not applicable to the facts."

In *Bond v. Bond,* 194 N.C. 448, 139 S.E. 840, the devise was to a nephew for life, and after his death to his oldest daughter, if he shall have one, who shall be named for testatrix. The Court said: "At the time the will was made it was uncertain whether the life tenant would be the father of a daughter who should be named for the testatrix, and for this reason the remainder was then contingent; but when the daughter was born and named the remainder *eo instanti* became vested."

In *Johnson v. Lee*, 187 N.C. 753, 122 S.E. 839, there was a deed to lands to A. W. Lee, an unmarried grantee for life, with remainder to his children, not then *in esse*. The Court said: "The life estate of A. W. Lee, appellant, is sufficient to uphold the estate in his children, though not *in esse* at the time, by way of contingent remainder till they were born, and thereafter as owners of a vested remainder."

In Shepherd's Touchstone, pp. 229-234-235, after treating of the necessity of a grantor, grantee and a thing granted in order to a valid grant, the author, as to the grantee, among other things, says: There shall "be a person in being at the time of the grant made, (if he be to take immediately) . . . But if he be to take by way of remainder, it is not necessary that he should be in being, so as there be a preceding estate of freehold to support a contingent remainder," etc. This statement of the learned author was recognized in this State in *Dupree v. Dupree*, 45 N.C. 164, in *Newsom v. Thompson*, 24 N.C. 277, and was directly approved and applied in *Powell v. Powell*, 168 N.C. 561, 84 S.E. 860, and *Johnson v. Lee, supra*.

The plaintiffs contend that the rule in *Shelley's case* applies, because " 'children' as used in the deed should be construed heirs generally or heirs of the body." In our opinion, the rule in *Shelley's case* does not apply, for we think the intent of the grantor is plainly manifest that he did not use the word "children" in the sense of heirs. *Williams v. Williams*, 175 N.C. 160, 95 S.E. 157; *Hutton v. Horton*, 178 N.C. 548, 101 S.E. 279.

In *Moore v. Baker*, 224 N.C. 133, 29 S.E. 2d 452, the Court said: "The use of the word 'children' following the life estate does not create a fee simple estate or a fee tail estate which would be converted by the statute into a fee simple estate. 'When the devise is to one for life and after his death to his children or issue, the rule (in *Shelley's case*) has no application, unless it manifestly appears that such words are used in the sense of heirs generally.' 25 A. & E., 651, and cases there cited; *Brown, J.*, in *Faison v. Odom*, 144 N.C. 107, 56 S.E. 793."

The plaintiffs contend that the rule against perpetuities is applicable. The contention is not sound. The manifest intent of the grantor is that Bennett D. Nelme was to take a life estate, and upon his death, his children, Mary and Nona, shall take a life estate and should hold their lands in severalty during their lives, and upon their respective deaths their respective shares should go to their respective children, if each of them had children. The grant of the future interest in the land "to the children of the said Mary and Nona Nelme respectively at their deaths," means that the future interests of Mary Nelme's children must vest during her life, and the future interests of Nona Nelme's children, if any, must vest during her life. Therefore, the rule against perpe-

tuities does not apply. *McQueen v. Trust Co.,* 234 N.C. 737, 68 S.E. 2d 831.

At the present time Nona Nelme Clarke has no children. In contemplation of law, the possibility of issue is commensurate with life. *McPherson v. Bank,* 240 N.C. 1, 81 S.E. 2d 386; *Prince v. Barnes, supra; Shuford v. Brady,* 169 N.C. 224, 85 S.E. 303.

A part of the will of William A. Smith is incorporated in the agreed facts. It has no bearing on the question before us, and is scarcely referred to in the briefs of counsel.

Mary Nelme Griffin and Nona Nelme Clarke have only life estates in the 1,325-acre tract of land, and cannot convey to L. C. Springer a fee simple title to the 11.87 acres of land they have contracted to convey to him. The four children of Mary Nelme Griffin have a vested remainder in their mother's undivided interest in the 1,325-acre tract of land, subject to open up to let in any afterborn child or children of their mother. *Mason v. White,* 53 N.C. 421; *Chambers v. Payne,* 59 N.C. 276; *Powell v. Powell, supra; Waller v. Brown, supra; Beam v. Gilkey,* 225 N.C. 520, 35 S.E. 2d 641; 33 Am. Jur., Life Estates, Remainders, Etc., sec. 134. The remainder to the children of Nona Nelme Clarke is contingent, but will *eo instanti* become vested upon her giving birth to a child. *Power Co. v. Haywood, supra; Bond v. Bond, supra;* 33 Am. Jur., Life Estates, Remainders, Etc., sec. 134.

The judgment below is

Reversed.