ROSALIE EUGENIA STIER CALVERT RAY, EXECUTRIX OF THE WILL OF ROSALIE EUGENIA STIER CALVERT, AND ROSALIE EUGENIA STIER CALVERT RAY, INDIVIDUALLY, v. DAVID RANDOLPH RAY, GEORGE CALVERT RAY AND OTHER CHILDREN WHO MAY HEREAFTER BE BORN TO ROSALIE EUGENIA STIER CALVERT RAY, AND JAMES MACRAE, GUARDIAN AD LITEM.

(Filed 20 June, 1967.)

1. Wills § 32—

When applicable, the rule in *Shelley's* case is applicable to both real and personal property in this jurisdiction.

**2. Wills § 35—**

Provision in a will that others named should take in the event the primary beneficiary should predecease testatrix without heirs, creates a gift in substitution which is eliminated if the primary beneficiary survives testatrix.

**3. Wills § 32—**

The rule in *Shelley's* case applies to a devise or bequest only if testator uses the word "heirs" in its technical sense of heirs general, designating persons to take in an indefinite line of succession, and when used to refer to the children or issue of the first taker, the rule does not apply; however, it will be presumed that testator used the technical term in its technical sense unless the contrary intent can be ascertained from the language of the instrument.

**4. Same—**

Testatrix devised and bequeathed all her property to her daughter during her lifetime and at her death to the "heirs of her body, if any", with further provision that if the daughter should die before testatrix without heirs of the body, the property should go to named collateral kin. *Held:* The daughter takes a fee tail under the rule in *Shelley's* case, converted into a fee simple by G.S. 41-1, since the instrument does not show that testatrix intended to use the word "heirs" in a sense other than heirs general, there being no limitation over in the event the daughter survived testatrix and then died without issue.

APPEAL by defendants from *Bailey, J.,* October 1966 Civil Session of CUMBERLAND, docketed in the Supreme Court as Case No. 701 and argued at the Fall Term 1966.

Action under the Uniform Declaratory Judgment Act (G.S. 1-253 through G.S. 1-267).

Plaintiff, as executrix and as a beneficiary named therein, brings this action to construe Article 2 of the will of her mother, Mrs. Rosalie Eugenia Stier Calvert. Mrs. Calvert died 5 September 1964. After directing the payment of her debts and funeral expenses, testatrix provided:

"Article 2.

"I hereby give, devise and bequeath all the rest, residue, and remainder of my estate, real, personal, or mixed, wheresoever situated, whereof I may be seized or possessed, or to which I may be in any manner entitled, or in which I may be interested at the time of my death, unto my dearly beloved daughter, Rosalie Eugenia Stier Calvert, to do with as she so desires during her lifetime, and at her death to the heirs of her body, if any; but if she should die before I, without heirs of the body, then to my following nieces, nephews, great-nieces and great-nephews as hereinafter designated." (The names of these collateral relations — 14 in number — and the property which they would have taken had

plaintiff predeceased testatrix, are set out in Articles 4, 5, and 6 of the will.)

Plaintiff is the Rosalie Eugenia Stier Calvert named in Article 2; however, she is now Rosalie Eugenia Stier Calvert Ray (Mrs. Ray). Mrs. Ray is the only child of testatrix and would have been her only heir had she died intestate. Plaintiff has two sons, defendants David Randolph Ray, now 21 years of age, and George Calvert Ray, aged 19.

Plaintiff contends that under Article 2 she takes her mother's entire estate in fee simple. Defendants contend that she takes only a life estate with remainder to her children. Judge Bailey held that, under the rule in *Shelley's case,* Mrs. Ray took all the property, both real and personal, in fee simple. Defendants were represented at the trial by their guardian *ad litem,* James MacRae, who was also guardian *ad litem* for any children who may hereafter be born to Mrs. Ray. From the judgment rendered, defendants appealed.

*Maupin, Taylor & Ellis for plaintiff appellee.*
*MacRae, Cobb & MacRae for defendant appellants.*

Sharp, J.  Whenever applicable, the rule in *Shelley's case* applies to both real and personal property in this jurisdiction. *Riegel v. Lyerly,* 265 N.C. 204, 143 S.E. 2d 65; *Chappell v. Chappell,* 260 N.C. 737, 133 S.E. 2d 666; *Martin v. Knowles,* 195 N.C. 427, 142 S.E. 313; *Welch v. Gibson,* 193 N.C. 684, 138 S.E. 25; *Hampton v. Griggs,* 184 N.C. 13, 113 S.E. 501; *Starnes v. Hill,* 112 N.C. 1, 16 S.E. 1011. There are many statements of the rule. One, approved by the Court in *Martin v. Knowles, supra* at 429, 142 S.E. at 313, is:

> "The rule in *Shelley's case* says, in substance, that if an estate of *freehold* be limited to A., with *remainder* to his heirs, general or special, the remainder, although importing an independent gift to the heirs, as original takers, shall confer the inheritance on A., the ancestor."

The question posed by this appeal is whether the rule applies to Article 2 of Mrs. Calvert's will, the substance of which is: I give all my estate to my daughter *R* for life, to do with as she desires, then to the heirs of her body, if any; but if she should predecease me without heirs of the body, then to 14 nieces and nephews subsequently named.

The final clause in the devise was a substitutional gift to testatrix' nieces and nephews in the event the primary object of her bounty, Mrs. Ray, should predecease her without heirs of her body. *Whitley v. McIver,* 220 N.C. 435, 17 S.E. 2d 457; *Early v. Tayloe,* 219 N.C.

363, 13 S.E. 2d 609. "Gifts are said to be substitutional when provision is made for someone to take the gift in the event of the death of the original beneficiary before the period of distribution. . . . Words of substitution become inoperative by the vesting of the gift, devise, or bequest in the primary taker." 96 C.J.S., Wills § 737 (1957). Therefore, when Mrs. Ray survived testatrix, the substitutional clause was eliminated, leaving the devise to Mrs. Ray, "to do with as she so desires during her lifetime, and at her death to the heirs of her body, if any. . . ."

Had the final phrase, *if any,* been omitted from the devise, we surmise that defendants would not have questioned the applicability of the rule in *Shelley's case.* A devise to *A* for life and at her death to the heirs of her body presents a classic case for its application. *Hammer v. Brantley,* 244 N.C. 71, 92 S.E. 2d 424; *Lide v. Mears,* 231 N.C. 111, 56 S.E. 2d 404; *Helms v. Collins,* 200 N.C. 89, 156 S.E. 152; *Bradley v. Church,* 195 N.C. 662, 143 S.E. 211; *Bank v. Dortch,* 186 N.C. 510, 120 S.E. 60; *Daniel v. Harrison,* 175 N.C. 120, 95 S.E. 37. See Block, The Rule in *Shelley's Case* in North Carolina, 20 N. C. L. Rev. 49, 64 (1941). By such a devise, the rule in *Shelley's case,* and the doctrine of merger, give *A* an estate tail which G.S. 41-1 converts into a fee simple. *In re Will of Wilson,* 260 N.C. 482, 133 S.E. 2d 189. Defendants contend, however, that when testatrix used the words *heirs of her body,* she was not using the term in its unrestricted technical sense as the lineal descendants of her daughter "who, from generation to generation become entitled by descent under the entail." Black's Law Dictionary (4th Ed., 1951) 856; *In re Will of Wilson, supra.* On the contrary, they argue that she used the term *descriptio personæ,* referring to the children or issue of her daughter who might be living at the daughter's death; that she did not mean successive generations of children, each generation of which should take under the entail. When the term *heirs of the body* is used in its technical sense, it imports a class of persons to take indefinitely in succession, from generation to generation. *Donnell v. Mateer,* 40 N.C. 7.

From their premise that testatrix did not use *heirs of the body* in its technical sense, defendants argue, therefore, that the rule in *Shelley's case* is inapplicable, for, unless the language of the instrument discloses that the words *heirs* or *heirs of the body* were used to designate an indefinite line of succession from generation to generation, the rule is irrelevant. *Wright v. Vaden,* 266 N.C. 299, 146 S.E. 2d 31. In support of this contention, defendants rely upon *Rollins v. Keel,* 115 N.C. 68, 20 S.E. 209; *Francks v. Whitaker,* 116 N.C. 518, 21 S.E. 175; *Sain v. Baker,* 128 N.C. 256, 38 S.E. 858;

*Puckett v. Morgan,* 158 N.C. 344, 74 S.E. 15; *Pugh v. Allen,* 179 N.C. 307, 102 S.E. 394; *Hampton v. Griggs, supra; Welch v. Gibson, supra.* In his opinion in *Welch v. Gibson, supra* at 691, 138 S.E. at 28, Stacy, C.J., stated the rule of these cases as follows:

> "When there is an ulterior limitation which provides that upon the happening of a given contingency, the estate is to be taken out of the first lines of descent and then put back into the same line, in a restricted manner, by giving it to some, but not to all, of those who presumptively would have shared in the estate as being potentially among the heirs general of the first taker, this circumstance may be used as one of the guides in ascertaining the paramount intention of the testator, and, with other indicia, it has been held sufficient to show that the words 'heirs' or 'heirs of the body' were not used in their technical sense."

The foregoing statement points up the distinction between the instruments construed in those cases and Mrs. Calvert's will. In each of the foregoing cases, the Court concluded that the author of the instrument had used the words *heir* or *heirs, bodily heirs,* or *heirs of the body,* to mean children or issue (thereby eliminating the application of the rule in *Shelley's case*) because there was an ulterior limitation over to a restricted class of heirs of the first taker or life tenant upon his death without "heirs" or "heirs of the body."

The rule of construction enunciated in *Welch v. Gibson, supra,* can have no application to Article 2 of Mrs. Calvert's will because it contains *no* limitation over in the event Mrs. Ray should die without heirs of her body *after* the death of testatrix. Testatrix' nieces and nephews, although cousins of Mrs. Ray and therefore presumptively among her heirs general, were to take only in the event Mrs. Ray died without heirs of the body before Mrs. Calvert's death.

This case is controlled by *Glover v. Glover,* 224 N.C. 152, 29 S.E. 2d 350, wherein the plaintiff devised title to land under a deed "to him his lifetime, and at his death to his heirs, if any." In holding that the conveyance invoked the rule in *Shelley's case* and vested the fee in the plaintiff, this Court said: "The use of the phrase 'if any' following the word heirs may not be held to prevent the application of the rule, since there is no limitation over. This distinguishes this case from *Puckett v. Morgan,* 158 N.C. 344, 74 S.E. 15, and *Jones v. Whichard,* 163 N.C. 241, 79 S.E. 503, relied on by defendant." *Id.* at 152, 29 S.E. 2d at 351.

*Foley v. Ivey,* 193 N.C. 453, 137 S.E. 418, involved a deed in which the description was followed by this clause, "this deed shall

hold good to and for the said *F. B., Jr.,* during his natural life and after that to the heirs of his body only." In holding that the rule in *Shelley's case* applied, this Court said:

> "In our opinion the addition to the usual formula of the word 'only' is not sufficient to justify the conclusion that the phrase 'heirs of his body' was not employed in the usual technical sense, but on the other hand as indicating issue or children. *It will be noted that there is no limitation over in the event of the grantee's death without 'bodily heirs,' or 'heirs of his body,'* . . . and in this respect several of the cases cited in the appellants' brief are distinguishable from the case under consideration." *Id.* at 453-454, 137 S.E. at 418. (Italics ours.)

In *Sharpe v. Isley,* 219 N.C. 753, 14 S.E. 2d 814, testator devised all his property to his wife, "to her and her heirs by me." He then added, "My wife is to have the exclusive and sole use of both my personal and real property and should she have living heirs by me, then all my estate . . . shall belong to her and her heirs in fee simple." No children were born to testator and his wife, and the question was whether the subsequent words, "and should she have living heirs by me, then all my estate . . . shall belong to her and her heirs in fee simple" limited the wife to a life estate. In holding that the wife took a fee tail estate, converted by G.S. 41-1 into a fee simple, the Court said:

> "If the testator had incorporated in his will a provision for a limitation over in the event his wife did not have 'living heirs' or children by him, a different situation would have been presented. . . . But there are no such words here and we may not add them to the will in order to serve a supposed intent. The intention of the testator must be ascertained from the language in which it is expressed, and it is the duty of the court to give the words used their legal effect." *Id.* at 754, 14 S.E. 2d at 815.

*Cf. Williams v. R. R.,* 200 N.C. 771, 158 S.E. 473, and *Sharpe v. Brown,* 177 N.C. 294, 298, 98 S.E. 825, 827 (cases in which the devisee, under the rule in *Shelley's case,* took a fee, subject to be divested for failure of issue).

There is no language in Mrs. Calvert's will to rebut the presumption that she used the words *heirs of her body* in their technical sense. The "real intention recognized and enforced by the law is that expressed in the will, and this is to be ascertained by a legal interpretation of the language employed to express it." *Leathers v.*

*Gray*, 101 N.C. 162, 165, 7 S.E. 657, 658. When a grantor or testator uses technical words or phrases in disposing of property, he is deemed to have used them in their well-known legal or technical sense unless, in some appropriate way, he indicates in the instrument that a different meaning shall be ascribed to them. *Whitley v. Arenson*, 219 N.C. 121, 127, 12 S.E. 2d 906, 910; "(O)therwise, technical words have no certain meaning or effect." *Pittman v. Stanley*, 231 N.C. 327, 329, 56 S.E. 2d 657, 659.

We hold that Article 2 of Mrs. Calvert's will comes within the rule in *Shelley's case*. Mrs. Ray, therefore, acquired an estate tail which G.S. 41-1 converted into a fee simple.

The judgment of the court below is

Affirmed.